194

Gilliland, Ogden, Withington, Shirk & Vaught, of Oklahoma City, for plaintiffs in error.

Howell & Deupree and Richard R. Linn, all of Oklahoma City, for defendants in error.

CORN, J. This is an appeal from a judgment of the district court of Oklahoma county upholding the validity of a property owner's agreement restricting the north half of block 8, Jordan Place addition to Oklahoma City, against the sale to, or occupancy by, those of negro blood.

Plaintiff's action was based upon a contract entered into in 1941 by all property owners in the north half of said block, covering 17 lots, of which plaintiff owned one and three-fourths lots. The contract declared for its purpose the maintenance of property values in that block for the mutual benefit of all, and provided that any deed, lease or conveyance in violation of the agreement would be void and could be set aside upon petition of one or more interested parties, the contract to constitute a mutual covenant running with the land.

The record reflects that a former restriction contract covering all of block 8 had been invalidated, and one negro had purchased property in the south half of this block. The owners in the north half of the block abandoned their efforts as to the entire block and concentrated their efforts on the north half only. The new contract was executed by all the property owners in the north half of said block and was duly recorded March 17, 1941; except as to W. B. and Hannah Hardee, who brought themselves under the provisions thereof by separate instrument recorded March 17, 1943.

In January, 1944, most of the property owners in the north half of block 8 entered into and filed for record a "Release of Restriction," wherein they recited the filing of the original contract, but stated they had mutually agreed that it was for their best interests, because of changed conditions, to release their property from such restrictions. Plaintiff neither signed nor acquiesced in the execution of this instrument.

Plaintiff's petition stated three causes of action based upon the original restriction contract. The first, sale of property covered by the contract by defendants Schwartz and wife to defendants Hall and wife, persons of negro blood; and asked that the trial court decree the contract to be binding, cancel and set aside the deeds, and enjoin defendants from further leasing or selling of their property in the block to persons of the negro race. The second cause of action asserted a further violation by defend-

ants Schwartz in that they had either rented or sold property covered by the restriction contract to negroes, and asked that such persons be enjoined from occupancy and defendant Schwartz be enjoined from further renting or selling to such persons.

The third cause of action alleged the restriction to be of benefit and enforcement thereof necessary, that the purported release of restrictions injured plaintiff by clouding the effect and validity of the restriction contract, and asked the trial court to declare same a binding contract running with the land, cancel and set aside the purported release, and enjoin all defendants from further lease or sale of property to negroes.

By answer defendants admitted execution of the restriction contract but alleged same was no longer of value in that since execution thereof the property involved in the contract had changed by reason of having become surrounded by negro property owners, so that it had become impractical to carry out the original intention and purpose of the contract. Defendants alleged the provisions of the contract had been broken down and were no longer of value, and for this reason asked that the restriction contract be declared invalid and canceled, and held to be a cloud upon the title of the defendants Hall and wife (negroes who had purchased from Schwartz).

The record reflects that prior to execution of the contract now before us two lots in the south half of block 8 were owned by a negro; two lots in the 1400 block on East 8th street, close to the north half of block 8, and four lots in the 1600 block on East 8th street were occupied by negroes. Since execution of the contract in question the remainder of the south half of block 8 has been bought up by negroes, as has the remainder of block 7, which is immediately to the east of the north half of block 8. Thus it may be seen that the north half of block 8 is surrounded to the east, southeast, south and southwest by negro occupants.

The evidence was directed toward showing that the property had a greater value because of the restriction contract that it would have were the restriction held invalid; and that the restriction made the property desirable for white occupancy, and if the restriction was upheld and a definite border line established, the value of the property would be maintained.

Numerous defendants testified that proximity of the negro population to the area had materially lessened the rental or sale value of their property. Some of these witnesses testified the value of the property, insofar as being of value to white purchasers, was totally destroyed.

In rendering judgment for plaintiff the trial court found the original contract to be a valid contract running with the land; the attempted release filed by defendants was set aside and canceled of record. The attempted conveyance from defendants Schwartz and wife to the Halls was canceled and set aside and title revested in grantors; and perpetually restrained and enjoined defendants from selling, leasing or disposing of any of the property covered by the contract to negroes; and ordered negro defendants to vacate premises they occupied and enjoined them from any further occupancy in the area, and provided for further appropriate action to compel compliance with the court's judgment.

Three propositions are urged for reversal of this judgment, the first of these being the contention that restrictions and prohibitions of the use of real property are not favored in the law and the rule of construction applicable to such covenants is one of strictness. That this is a fundamental principle of the law of real property is unquestioned. Christie v. Lyons, 173 Okla. 158, 47 P. 2d 128; Magnolia Pet. Co. v. Drauver, 183 Okla. 579, 83 P. 2d 840. So firmly settled is this rule of construction that

the proposition requires no discussion, other than to direct attention to our holding in Vaughn v. Lyon, 122 Okla. 179, 252 P. 1088, which was reaffirmed in Lyons v. Wallen, 191 Okla. 567, 133 P. 2d 555, in passing upon this identical question.

Defendants' second proposition is that where restrictions are for the mutual benefit of the burdened properties, when the locality is so changed in character and environment that to enforce the covenant would be oppressive or would substantially lessen the value of the property, the covenant will not be enforced. Supporting this proposition defendants assert that (1) the surrounding neighborhood has changed without fault of the covenanting parties; and (2) the value of the property for white occupancy has decreased to such extent, while increasing in value for negro occupancy, that enforcement of the covenant would be oppressive and inequitable.

Thus, in reality, it is to be seen that defendants' appeal is based upon the fact that, subsequent to the date of the contract, the surrounding neighborhood has changed by reason of the fact that property on three sides of the north half of block 8 is now occupied entirely by negroes. And, further, that because of this condition the property in question has become less valuable for white occupancy, but increasingly valuable for negro occupancy. Then upon this basis defendants urge that conditions now are such that the purpose of the restriction cannot be accomplished without the enforcement being oppressive and inequitable.

Review of the cases from this court reveals that this precise question has not been presented heretofore, despite the numerous related decisions of our court. Christie v. Lyons, 173 Okla. 158, 47 P. 2d 128; Veal v. Hoppe et al., 183 Okla. 116, 80 P. 2d 275; Caudle et al. v. Olive et al., 185 Okla. 596, 95 P. 2d 615; Glaze v. Drawver, 189 Okla. 402, 117 P. 2d 544; Lyons v. Wallen, supra; Hemsley v. Sage, 194 Okla. 669, 154 P.

2d 577; Hemsley v. Hough, 195 Okla. 298, 157 P. 2d 182.

Defendants cite numerous decisions of other courts holding generally that where property has changed to the extent that it is unfit or unprofitable for the use intended by the restriction laid thereon, equity will not enforce such restriction. And this is the basis of the decision in Trustees of Columbia College v. Thacher, 87 N.Y. 311, and in Pickel v. McCawley, 329 Mo. 166, 44 S.W. 2d 857. Supporting their argument defendants place particular reliance upon Van Meter v. Manion, 170 Okla. 81, 38 P. 2d 557, wherein was involved the question of plat restrictions against business as to certain property in Oklahoma City.

Although the decision of this court upheld the plat restrictions, the opinion presented an exhaustive review of the leading decisions touching the question, many of which hold to the effect that such covenants will not be enforced where conditions are so changed that enforcement would be burdensome. From this defendants reason that herein is presented such a proper case of changed conditions as to justify examination of the equities of the parties in the restricted area.

Under the circumstances the matter necessarily must turn on the fact question, whether the changed conditions in the area (the encroachment of negro population surrounding the property covered by the restrictive contract) are such that it would be unjust, oppressive or inequitable to enforce the restrictive covenant.

It should be noted that the trial court specifically found that while there had been an increase in negro ownership and occupation to the south and east of the half block involved herein, this was neither sufficient to destroy the value of the restriction, nor to justify the trial court in refusing enforcement thereof.

Defendants contend that the court must weigh the equities of all the owners involved herein as opposed to plain-

tiff, the one person in the area who desires to uphold the contract. Defendants' argument depends principally upon the alleged change of conditions. However, seemingly defendants overlook the fact that at the time they entered into this contract the negro population already was occupying property immediately southwest, south and southeast of the north half of this block, which fact was known to all who signed the agreement. Under these circumstances the change of condition relied upon by defendants exists only as a matter of degree. The restrictive covenant now complained of was drawn when negro occupancy existed in exactly the same areas as at the present time, except for those now occupying the north half of block 7, to the east of the property covered by the contract.

The statement of the Missouri court in Porter v. Johnson, 232 Mo. App. 1150, 115 S.W. 2d 529, is particularly applicable to the present situation.

"If no radical change in the condition and use of the restricted property occurs, the circumstances that there have been changes in the territory surrounding the covenanted area will not of itself be sufficient to destroy the restrictions." (Citing authorities.)

In Mead, etc., v. Dennistone et al., (173 Md. 295, 1938), 196 Atl. 330, 114 A.L.R. 1227, a similar case was presented, and the defendants in that case offered the same argument as is made in the matter now before us, that the reason for the agreement no longer existed, the character of the neighborhood having so changed as to make the agreement ineffectual to accomplish its purpose, there being large numbers of colored persons occupying premises close to the restricted property. In denying such contention the court said: ". . . this does not show such a change in the neighborhood as to nullify the agreement, and render it useless. . . ." Also, see Grady v. Garland, 89 Fed. 2d 817, wherein it is pointed out that such restrictions are for the benefit of the property to which it applies, and not affected by conditions arising on adjoining property.

The restriction contract was entered into by all property owners in the north half of block 8. The provisions are reasonable and contracts of this nature are not void as being against public policy. Lyons v. Wallen, supra. We conclude that the trial court correctly applied the rule recognized by this court in enforcing the restriction contract against these defendants.

Defendants' last contention is that restrictive covenants will not be upheld when the primary purpose for their continuation is not protection of the particular property, but rather to enhance the value of surrounding properties.

This contention is based upon the testimony of plaintiff, and other witnesses, who admitted they owned other property in the area and so were interested in stopping the encroachment of the negro population to the north to protect the value of their other property. Defendants urge that plaintiff, and those similarly situated, desire only to maintain the restriction as a "buffer" at the expense of the defendants.

On this feature of the case defendants had evidence that the value of property in the area for white occupancy had been destroyed, while becoming more valuable for negro occupancy.

The fact that the restriction contract made certain the lack of further encroachment would undoubtedly tend to stabilize values. This would be true not only in the restricted area, but in the surrounding areas as well. We are cited to no rule requiring equity to act by nullifying a contract merely because the party seeking enforcement thereof desires, among other things, to maintain property values, since it is obvious that such a result was a motivating factor in the inducement of the original agreement.

This is an equity case and in such cases this court will examine the record

and weigh the evidence, but will not disturb the judgment on appeal unless it appears that such judgment is clearly against the weight of the evidence. King v. Jackson, 196 Okla. 327, 164 P. 2d 974; Wood v. Reed, 196 Okla. 498, 166 P. 2d 85. The record amply supports the trial court's judgment, and the judgment accordingly is affirmed.

HURST, C.J., DAVISON, V.C.J., and OSBORN, BAYLESS, WELCH, GIBSON, and ARNOLD, JJ., concur.