CAROLINE KNEIP et al. Defendants in Error, vs. CHARLES
H. SCHROEDER, Plaintiff in Error.

*Opinion filed October 26, 1912.*

1. BUILDING LINES—*parties who violate building line restriction
cannot compel others to observe it.* Property owners who erect
buildings having walls, bay windows and swell fronts extending be-
yond the established building line have no standing in equity to en-
join another property owner from erecting his building in greater
disregard of such line. (*Curtis* v. *Rubin,* 244 Ill. 88, followed.)

2. SAME—*when a court of equity will decline to enforce build-
ing restriction.* Where the construction of an elevated railroad
through a block has virtually destroyed the value of adjoining lots
as residence property, equity will decline to enforce a building line
restriction but will leave the parties to their action at law.

WRIT OF ERROR to the Superior Court of Cook county;
the Hon. FARLIN Q. BALL, Judge, presiding.

ARNOLD TRIPP, for plaintiff in error:

Specific performance is discretionary, and will not be
decreed if it results in hardship and injustice to one party
without benefit to another. *Conger* v. *Railroad Co.* 120
N. Y. 29..

All doubts as to restrictions are resolved in favor of
natural rights and against restrictions. *Hutchinson* v. *Ul-
rich,* 145 Ill. 342; *Ewertsen* v. *Gerstenberg,* 186 id. 344.

Equity will not enforce a building restriction by in-
junction but will leave the complainant to his remedy at
law, where, by acts of the party imposing such restriction,
or those claiming under him, the property, and that in the
neighborhood, has so changed in its character as to make
it unfit or unprofitable for use if the restriction be en-
forced, or where to grant relief would be a great hardship
on the defendant and no benefit to the complainant, or
where the complainant has waived or abandoned the re-
striction. *Ewertsen* v. *Gerstenberg,* 186 Ill. 344.

Projections or extensions in the shape of bay windows running to the top of the buildings is a violation of the covenant in the deed. *Sanborn* v. *Rice,* 129 Mass. 397; 5 Am. & Eng. Ency. of Law, (2d ed.) 7; *Curtis* v. *Rubin,* 244 Ill. 88.

Where others violate covenants by building bay windows and extensions they are estopped from enforcing the covenants against others. *Moore* v. *Murphy,* 89 Hun, 176; *Jackson* v. *Stevenson,* 156 Mass. 502.

Equity will not lend its aid where the character of the property has changed. 5 Am. & Eng. Ency. of Law, (2d ed.) 17, and authorities cited; *Coughlan* v. *Parker,* 46 Mo. App. 73; *Star Brewery Co.* v. *Primas,* 163 Ill. 660; *Ewertsen* v. *Gerstenberg,* 186 id. 344.

A custom, to be binding, must be uniform, long established and generally acquiesced in, and so well known as to induce the belief that parties contracted with reference to it, when nothing is expressed to the contrary. *Turner* v. *Dawson,* 50 Ill. 85; *Benevolent Society* v. *Baldwin,* 86 id. 479; *Railway Co.* v. *Jenkins,* 174 id. 407.

DAVID K. TONE, for defendants in error:

Where the main front wall of a building is erected upon a building line, the fact that porches, bay windows, steps and similar architectural structures project beyond the building line does not constitute a violation of such a building line restriction. *Hawes* v. *Favor,* 161 Ill. 440; *Graham* v. *Hite,* 20 S. W. Rep. 506; 13 Cyc. 716; *Olcott* v. *Shepard, Knapp & Co.* 185 N. Y. 584; *Tear* v. *Freebody,* 93 Eng. C. L. 228.

In 13 Cyc. 716, the rule is laid down, and many authorities are cited, that "a restriction as to a building line will be held to intend only that the wall of the building should be on the line, and will not prohibit the erection of a stoop, porch or platform along it unless they project an unreasonable distance as compared with like structures."

*Ewertsen* v. *Gerstenberg,* 186 Ill. 344, and *Curtis* v. *Rubin,* 244 id. 88, cited by defendant, are both cases where the original line had been abandoned by being persistently disregarded, and attempts were there made to establish new lines at points different from where the plats made the reservations.

Both the chancellor and the Appellate Court found that the main front walls of the buildings of complainants and other property owners had been substantially placed on the building line in question. A variation of a few inches (in every instance less than a foot) was not sufficient to constitute an abandonment of the building line restriction.

In *Tear* v. *Freebody,* 93 Eng. C. L. 227, the court held, referring to a building line established by a certain section of an English statute, where the houses varied somewhat from that line: "The regular line of buildings mentioned in that section cannot possibly mean a geometrical line. It must mean substantially such a line as shall preserve uniformity of appearance."

The uncontradicted evidence in this case shows that the phrase "building line" has a settled meaning among architects, builders, real estate men and the building department of the city of Chicago; that as interpreted in the city of Chicago it applies to the main front wall of the building, and not to bays, steps, porches and similar architectural structures. Parol evidence as to the meaning of the phrase "building line" in the city of Chicago was competent. *Myers* v. *Walker,* 24 Ill. 134; *Elgin* v. *Joslyn,* 136 id. 525; *Gaunt* v. *Pries,* 21 Mo. App. 540; *Miller* v. *Railroad Co.* 179 Pa. St. 350; *Lumber Co.* v. *Lumber Co.* 79 Mich. 307; *Farnum* v. *Railroad Co.* 66 N. H. 569; *Hatch* v. *Douglas,* 48 Conn. 116.

The evidence shows that, prior to the time in question, complainant and other property owners had interpreted the building line restriction in question to apply only to the main front wall of the buildings, and not to steps, porches,

bay windows and similar architectural structures. The practical construction of a contract placed upon it by the parties is most persuasive evidence as to its true meaning. *Burgess* v. *Badger,* 124 Ill. 288; *M. E. Church* v. *Brose,* 104 id. 206; *Topliff* v. *Topliff,* 122 U. S. 121; *Lowrey* v. *Hawaii,* 206 id. 205; *Schofield* v. *Bank,* 97 Fed. Rep. 282; *Railway Co.* v. *Railway Co.* 101 id. 792; *Fitzgerald* v. *Bank,* 114 id. 474; *Life Ins. Co.* v. *Wright,* 126 id. 82; *Railway Co.* v. *Pennsylvania Co.* 143 id. 757.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Caroline Kneip and others, owners of property located on Janssen avenue between Cornelia and Roscoe streets, filed a bill in the superior court of Cook county against Charles H. Schroeder to enjoin him from constructing a building on said street which will occupy a portion of the space between the street line and the building line as established by the plat subdividing and laying out the blocks facing upon said street. The bill alleges that there is a building line on both sides of Janssen avenue between Roscoe and Cornelia streets, extending back twenty feet from the lot line; that the street between the two blocks is a residence street, and that all buildings on said avenue have been so constructed by the different lot owners as to observe and comply, in every instance, with the building line, and that no buildings or improvements were erected upon any of the lots nearer than twenty feet from the front lot line; that each of the complainants who owned property on said avenue had erected his building so as to observe the twenty-foot building space, and that none of the other buildings had been constructed upon any part of the twenty feet reserved as a building line. The bill charged that Schroeder was the owner of lot 22 and the south half of lot 21, in block 8, and that he proposed to erect on this property a three-story flat-building and extend the building upon the twenty-foot building line, whereby the view, light and air

of the other buildings on the street would be shut off and the property greatly depreciated in value. The bill avers that the building line has been observed and complied with by all persons who have heretofore erected buildings on the said streets. The bill prayed for an injunction to prevent Schroeder from extending his building beyond the property line, and to compel him to tear down such of the walls as had already been erected nearer the street than the building line.

Schroeder, in his answer, denied that any building line existed on Janssen avenue which had been regarded by any of the property owners in the erection of buildings and improvements on said avenue, and charged that the supposed building line had been disregarded by the property owners on both sides of said street by erecting buildings which projected over said line. The answer charged that all of the complainants had erected their buildings over the line, and that they had never made any protest against the repeated violations of the building line by lot owners on said avenue. The answer also set up the fact that since the subdivision was laid out the Northwestern Elevated railroad had constructed an elevated railroad alongside of Schroeder's property; that trains were operated on the elevated structure and that the character of the property alongside the railroad has entirely changed, and that it is no longer desirable as a residence property but can only be used now for an apartment building or store; that within two hundred feet of the Schroeder lots a station for taking on and letting off passengers has been erected by the elevated railroad company, which still further detracts from the value of his lots for residence purposes; that the lot is only one hundred and twenty feet deep, and that if twenty feet are taken off the front it would not leave room for the construction of an apartment building that would be profitable.

255 — 40

A hearing was had upon the issues thus formed, which resulted in a final decree enjoining Schroeder from erecting his proposed building so that the main front wall would stand nearer than twenty feet of the front or street line. From this decree an appeal was prosecuted by Schroeder to the Appellate Court for the First District, where the decree of the circuit court was reversed and the cause remanded to the superior court, with directions to that court to dismiss the bill for want of equity. An application for *certiorari* was presented to this court, upon the consideration of which this court reached the conclusion that a freehold was involved and that the appeal should have been direct to this court. The judgment was reversed and the cause remanded, and the Appellate Court has transferred the case to this court under the statute.

The facts as established by the testimony are in substance as follows: Janssen avenue extends north and south. Roscoe street crosses Janssen avenue at right angles, and one block north Cornelia street crosses Janssen avenue. The Northwestern Elevated railroad crosses Janssen avenue from east to west, and occupies lot 29 on the west side of the avenue and lot 20 on the east side. The building which Schroeder proposes to erect will occupy a part of lot 21 and substantially all of lot 22, which are immediately south of the elevated railroad and on the east side of Janssen avenue. Further south, toward Roscoe street, there are no other buildings on the east side of Janssen avenue, and lots 17, 18 and 19 are vacant north of the elevated railroad. All of the other lots on the east side are improved except lots 1 and 2, which appear to be vacant. On the west side there are three vacant lots next to Roscoe street, being lots 25, 26 and 27. Lot 28 is improved, as are also lots 30 to 44, inclusive. Lot 45 is vacant and lot 46 has a house upon it, while lots 47 and 48 (the remaining front lots in that block) are vacant. There are nine buildings on the east side of Janssen avenue and fourteen on the

west side, all of which are fronting upon said avenue. All of these buildings, with a single exception, have projections, such as steps, porches, bay-windows and the like, extending beyond the building line. Thus, the building on the opposite side of the street from the Schroeder building, on lot 28, which is the only building south of the elevated railroad, is a two-story and basement frame building, the main wall of which is nine inches over the building line, and a bay-window extends along the front of the building, occupying nearly three-fourths of the entire width of the front and extends four feet nearer the street than the building line. North of the elevated railroad, on the west side of the avenue, the first building is on lot 30, which is a three-story and basement brick building, which has a square projection commencing near the corner of the south wall of the building and extending about eleven feet in width, running from the basement to the roof. This extension is practically four feet over the building line and the porch and steps are nine feet over the building line. The next building, on lot 31, is a two-story frame, which has an extension, consisting of a combination bay and porch, along the entire front of the building, which encroaches upon the space beyond the building line four feet. A similar condition exists in relation to practically all of the buildings on the west side of the street, and the condition is the same on the east side. Without taking the time to describe each building, it may be said that all of these buildings, with one exception, have extensions, as above described, from two to nine feet beyond the building line, and in many instances the main wall of the building is slightly over the building line. Most of these extensions were as high as the first story of the building and were a part of the building itself.

There is no controversy about the facts which are testified to by surveyors, and the actual condition is described and accurate measurements are given. The only attempt to

meet these facts is by the testimony of a number of witnesses to the effect that extensions such as are above described are not regarded as encroachments upon a building line. Restrictions upon the use of property such as claimed here are imposed for the benefit of the several lots and give to the purchasers a right in the nature of an easement, which will be protected in equity against the grantees of the lots. (*Hutchinson* v. *Ulrich,* 145 Ill. 336; *Curtis* v. *Rubin,* 244 id. 88.) In the case last above cited this court had before it a situation very similar to that presented by this record. There certain property owners who had themselves encroached beyond the building line with projecting or swell fronts or bays sought to enjoin another lot owner from erecting a building without reference to such building line, and it was held that the complainants, who had themselves disregarded the building line, were in no position to ask a court of equity to enforce the restriction against others. This court in that case, on page 94, said: "Unquestionably, if they had observed the line themselves and not assented to its violation by others, equity would have protected their rights, but they disregarded the building line to the extent that it suited their desires or convenience to do so, and the only question between them and the defendants related to the extent or degree to which the restriction could be ignored. We do not think that the complainants, who had disregarded the restriction and abandoned the building line created by the plat, could be heard to object that the defendants were violating the condition to a greater extent than they were." In our opinion the case at bar cannot be distinguished from the *Curtis case,* and the rule there announced must control here.

Again, we think there is much force in the fact that the construction of the elevated railroad across Janssen avenue so changed the situation of the property between the elevated railroad and Roscoe street that it was no longer desirable or suitable for residence purposes, and that this

being true, equity will not enforce such restriction but will leave the parties to their action at law. *Ewertsen* v. *Gerstenberg,* 186 Ill. 344.

The decree of the superior court will be reversed and the cause remanded to that court, with directions to dismiss the bill for want of equity.

*Reversed and remanded, with directions.*